1  Bin Li (SBN223126)
2     *usbinli@sbcglobal.com*
   LAW OFFICES OF BIN LI & ASSOCIATES APLC
3  17800 Castleton Street, Suite 605
4  City of Industry, California 91748
   Telephone: (626) 839-0277
5  Facsimile: (626) 839-0322
6
7  Bryon Y. Chung (SBN250299)
      *bryon@bryonchungesq.com*
8  **BRYON Y. CHUNG, APC**
9  5670 Wilshire Boulevard, Suite 1800
   Los Angeles, California 90036
10 Telephone: (323) 648-6740
11 Facsimile: (323) 704-3536
12
   Attorneys for Plaintiff
13 Billion International Trading, Inc.
14
15             UNITED STATES DISTRICT COURT
16            CENTRAL DISTRICT OF CALIFORNIA
17
18
   BILLION INTERNATIONAL          ) Case No. CV12-06705 GW (Ex)
19 TRADING, INC., a California     )
20 corporation,                    )
                                    ) BILLION INTERNATIONAL
21          Plaintiff              ) TRADING, INC.'S SECOND
                                    ) AMENDED COMPLAINT FOR:
22                                  )
              v.                    ) 1. FRAUD;
23                                  ) 2. BREACH OF EXPRESS
24 UNIVERSAL SPORTSWEAR,           )    CONTRACTUAL
   INC., a Georgia corporation,    )    INDEMNITY;
25 MASHKOOR HASSAN, an             ) 3. EQUITABLE INDMENITY;
26 individual; TANU (USA), INC.,   ) 4. RICO (Count One) – Violation
27 a New York corporation;         )    of 18 U.S.C. § 1962(b);

COPY

| | |
|---|---|
| 1   VIPAL KAPOOR, individual; | ) |
| 2   HARISH DHINGRA, an | )   **5. RICO (Count Two) – Violation** |
|     individual; DHINGRA & | )       **of 18 U.S.C. § 1962(c);** |
| 3   ASSOCIATES, entity form | )   **6. RICO (Count Three) –** |
| 4   unknown; and DOES 1 through | )       **Violation of § 1962(d)** |
| 5   20, | ) |
| 6       Defendants. | ) |
| 7 | ) |
| 8 | ) |

9

10

11       *COMES NOW* Plaintiff, complaining against defendants,

12  and each of them, as follows:

13

14                   **JURISDICTION AND VENUE**

15       1.     This Court has original jurisdiction over BIT's claims

16  that Defendants violated the federal RICO statutes (18 U.S.C. §

17  1961, *et seq.*) pursuant to 28 U.S.C. § 1331. Plaintiff's claims

18  brought under California law are so related to its federal claims,

19  over which the Court has original jurisdiction, that they form part

20  of the same case or controversy. Under Article III of the United

21  States Constitution, the Court has jurisdiction over Plaintiff's

22  state common law claims pursuant to 28 U.S.C. § 1367.

23       2.     In the alternative, the jurisdiction of this Court over

24  the subject matter of this action is predicated on 28 U.S.C. § 1332

25  (diversity jurisdiction). The amount in controversy exceeds

26  $75,000.00, exclusive of interests and costs.

1   2. Venue is proper in this Court as Plaintiff's principal

2 place of business is located in the Central District of the State of

3 California.

4   3. The intentional tort claims alleged in this Complaint

5 arose in the Central District of the State of California. Defendants,

6 each of them, purposefully directed their fraudulent activities to

7 the forum state.

8

9          **THE PARTIES**

10   4. At all relevant times, Plaintiff Billion International

11 Trading, Inc. ("BIT" or "Plaintiff") is and was an active California

12 corporation with its principal place of business located at 12221 E.

13 Rush St., Unit D, in the County of Los Angeles, State of California.

14 Plaintiff is in the business of manufacturing and wholesale

15 distribution of apparel and textiles throughout the United States.

16   5. Plaintiff is informed and believes, and based thereon

17 alleges that Defendant UNIVERSAL SPORTSWEAR, INC.

18 ("USI"), is a Georgia corporation with its principal place of

19 business located at 5317 Buford Highway NE, DeKalb County,

20 State of Georgia. USI is a retail merchant who regularly deals in

21 "plus size" or "big and tall" apparel for sale to the general public.

22   6. Plaintiff is informed and believes, and based thereon

23 alleges that Defendant MASHKOOR HASSAN ("HASSAN") is an

24 individual residing in DeKalb County, State of Georgia. Plaintiff is

25 further informed and believes, and based thereon alleges that

26 throughout all relevant times mentioned herein, HASSAN was

1   and is a shareholder, officer, corporate director, or corporate

2   director acting as an officer of defendants TANU (U.S.A.), INC.

3   and USI.

4       7.    Plaintiff is informed and believes, and based thereon

5   alleges that TANU (U.S.A.), INC. ("TANU") is a New York

6   corporation with its principal place of business located at 1165

7   Broadway, Suite 307, New York, New York 10001.

8       8.    Plaintiff is informed and believes, and based thereon

9   alleges that VIPAL KAPOOR ("KAPOOR') is an individual

10  residing in the County of New York, State of New York. Plaintiff is

11  further informed and believes, and based thereon alleges that at

12  all relevant times mentioned herein, KAPOOR was and is a

13  shareholder, officer corporate director, or corporate director acting

14  as an officer of defendants TANU and USI.

15      9.    Plaintiff is informed and believes, and based thereon

16  alleges that defendant HARISH DHINGRA ("DHINGRA") is an

17  individual residing in Houston County, State of Texas. Plaintiff is

18  further informed and believes, and based thereon alleges that at

19  all relevant times, DHINGRA was and is an attorney licensed to

20  practice law in the State of Texas. At all relevant times,

21  DHINGRA was and is the principal of defendant DHINGRA &

22  ASSOCIATES, a law firm located in Friendswood, Texas.

23      10.    Plaintiff is informed and believes, and based thereon

24  alleges that defendant DHINGRA & ASSOCIATES ("DHINGRA

25  FIRM"), an entity of unknown formation but organized under

26  Texas laws, with its principal place of business located at 5307

1  Bulen Avenue, Friendswood, Texas 77546, in Houston County,

2  State of Texas. Plaintiff is further informed and believes, and

3  based thereon alleges that at all relevant times herein, DHINGRA

4  & ASSOCIATES was the vehicle by which DHINGRA offered and

5  provided legal services to the general public.

6

7                **ALTER EGO ALLEGATIONS**

8        **(As To Defendants USI, TANU, HASSAN, and KAPOOR)**

9        11.    Plaintiff is informed and believes, and based thereon

10  alleges that at all relevant times herein, defendants USI and

11  TANU were governed and controlled by HASSAN and KAPOOR

12  such that there is a unity of interest and ownership to the extent

13  that the individuality or separateness of the corporate defendants

14  from each other and from the individual defendants have ceased;

15  further, adherence to the fiction of the separateness of the

16  corporate defendants from each other and from HASSAN and

17  KAPOOR would, under the circumstances, sanction a fraud or

18  promote injustice, in particular:

19            a.    Plaintiff is informed and believes, and based

20  thereon alleges that HASSAN, KAPOOR, and the individual DOE

21  defendants have treated the assets of USI and TANU as their own

22  or otherwise commingled personal assets with the corporate

23  defendants' assets; that USI and TANU have intermingled their

24  assets with the other; that HASSAN and KAPOOR has directed or

25  caused each corporate defendant to pay or guarantee the financial

26  liabilities and obligations of the other.

1             b.     Plaintiff is informed and believes, and based

2 thereon alleges that the individual defendants have failed to

3 maintain minutes or adequate records of defendants USI and

4 TANU;

5             c.     Plaintiff is informed and believes, and based

6 thereon alleges that the individual defendants dominated and

7 controlled defendants USI and TANU, and that one or the other

8 corporate defendant controlled and dominated the other;

9             d.     Plaintiff is informed and believes, and based

10 thereon alleges that the individual defendants have failed to

11 adequately capitalize USI and TANU;

12             e.     Plaintiff is informed and believes, and based

13 thereon alleges that defendants USI and TANU were mere shells,

14 instrumentalities or conduits from the business of the individual

15 defendants.

16             f.     Plaintiff is informed and believes, and based

17 thereon alleges that defendants USI and TANU were organized by

18 the individual defendants with the intent to avoid performance by

19 the use of the corporate entities as a shield against personal

20 liability.

21

22 **AGENCY AND ALTERNATIVE CONSPIRACY ALLEGATIONS**

23 **(All Defendants)**

24      12.     Upon information and belief, Plaintiff alleges that each

25 of the named Defendants, including the fictitiously named DOE

26 defendants, was the agent, employee, partner or officer, director or

1   joint venture of each of the other defendants identified herein, and

2   doing the things herein alleged was acting within the course and

3   scope of said agency, employment, partnership, joint venture, or

4   association and under the direction of, and with the consent and

5   permission, advance knowledge, or ratification of the other

6   defendants.

7       13.   Upon information and belief, as an alternative to

8   theory of liability based on principles of agency, Plaintiff alleges

9   that Defendants, and each of them, including the fictitiously

10   named DOE defendants, entered into a civil conspiracy to commit

11   the actionable wrongs, in which the Defendants, and each of them

12   participated in or in which they concurred, expressly or tacitly,

13   with knowledge of its unlawful purpose and the harm it would

14   inflict on Plaintiff.

15       a.   Plaintiff is informed and believes, and based

16   thereon alleges that in or before February 2008, HASSAN and

17   KAPOOR concocted and implemented a scheme whereby

18   individual defendants would "secure" the intellectual property

19   rights of third parties by unlawful, surreptitious, fraudulent, and

20   illegal means as a means for USI and TANU to induce overseas

21   apparel suppliers, including Plaintiff, to unwittingly manufacture

22   goods bearing counterfeit marks. HASSAN and KAPOOR, on

23   behalf and for the benefit of USI and TANU and themselves,

24   retained the services of DHINGRA to file trademark registration

25   applications with the United State Patent and Trademark Office

26   ("USPTO") to "register" marks they knew to be owned by others.

1          b.     Upon information and belief, Plaintiff alleges that

2    Defendants engaged in the described conduct to obtain "official"

3    documentation evidencing their purported ownership and

4    legitimacy of trademarks, logos, or designs in relation to certain

5    commercial goods. Defendants would then present the materially

6    false "official" registration papers to unsuspecting overseas

7    suppliers when asked to present proof of their ownership or

8    legitimacy of the trademarks, logos, or designs Defendants

9    requested to be affixed on ordered goods.

10          c.     Upon information and belief, Plaintiff alleges that

11   Defendants would receive goods bearing counterfeit marks from

12   unsuspecting overseas suppliers and offer them for sale to the

13   general public through their physical retail commercial

14   establishments and through the internet.

15   14.    By engaging in the trafficking of counterfeit goods in

16   derogation of the intellectual property rights of others, USI and

17   TANU realized substantial financial gain through sales of

18   unauthorized goods. In turn, the individual defendants also

19   enjoyed the corporate defendant's financial gains downstream:

20   HASSAN and KAPOOR as the majority equity owners of USI and

21   TANU; and, DHINGRA, by virtue of the legal fees presumably

22   paid in connection with the bogus trademark filings.

23

24                      **GENERAL STATEMENT OF FACTS**

25   15.    For almost a decade, Defendants purchased certain

26   finished garments from Plaintiff by submitting purchase orders

1    from time to time. The purchase orders were submitted to Plaintiff

2    either by KAPOOR or HASSAN on behalf and for the benefit USI

3    and TANU. Some of the purchase orders identified TANU as the

4    purchasing party. Other purchase orders identified USI as the

5    purchasing party. Both TANU and USI engage in a retail business

6    that caters to "plus size" individuals. Accordingly, the purchase

7    orders submitted by defendants were typically for custom made

8    goods consisting of oversize t-shirts and hooded sweatshirts.

9    Plaintiff, in turn, would submit the purchase orders to overseas

10   manufacturers the particular goods. At all relevant times herein

11   KAPOOR and HASSAN directed the activities of USI and TANU.

12        16.    In or about February 2008, HASSAN inquired whether

13   Plaintiff was able to procure acrylic and wool caps with a distinct

14   "A" logo embroidered on the front ("CAPS"). Defendants provided

15   Plaintiff with a sample design of the desired logo. Plaintiff

16   informed HASSAN that it would be able to procure the CAPS.

17        17.    On or about September 18, 2008, TANU submitted a

18   purchase order for 20,160 CAPS ("Purchase Order). Upon

19   information and belief, Plaintiff alleges that KAPOOR executed

20   and submitted the signed purchase order to Plaintiff. Handwritten

21   notes appearing on the Purchase Order requests that the CAPS be

22   made "as per same like sample" [*sic*]. A true and correct copy of

23   the purchase order is attached hereto as Exhibit "A" and

24   hereinafter incorporated by reference. At the time Defendants

25   submitted the purchase order, Plaintiff had no reason to believe or

1   suspect that the "A" logo ("Spurious Mark") Defendants' requested

2   infringed on the intellectual property rights of others.

3       18.    Later, when asked about the legitimacy of the mark

4   and whether its use was authorized, KAPOOR and HASSAN

5   assured Plaintiff that the requested logo was TANU's intellectual

6   property. To support their claims of ownership over the Spurious

7   Mark, KAPOOR and HASSAN provided Plaintiff with the

8   evidence of a trademark application submitted to the USPTO.

9       19.    Plaintiff is informed and believes, and based thereon

10  alleges that DHINGRA and DHIGRA FIRM prepared and

11  submitted the trademark registration application to the USPTO

12  on behalf of USI on or about September 26, 2008.

13      20.    Plaintiff arranged for the CAPS to be manufactured by

14  a supplier located in China. The CAPS arrived in the Port of

15  Atlanta on or about December 16, 2008.

16      21.    On or about December 19, 2008, officials of the U.S.

17  Customs and Border Patrol ("CBP") selected the shipment for

18  inspection. Upon inspection, CBP officials noted that the logo

19  affixed to the CAPS were substantially similar, if not identical, to

20  the stylized "A" mark commonly associated with the Major League

21  Baseball ® ("MLB") franchise, the Atlanta National League

22  Baseball Club, Inc. ("Atlanta Braves").

23      22.    CBP contacted MLB and confirmed that the CAPS

24  infringed on the Atlanta Braves' trademark. Upon learning the

25  infringing nature of the CAPS, CBP seized the shipment and

26  commenced legal proceedings against Plaintiff. CBP commenced

1   Seizure Case No.: 2009-1704-000082-01 ("Seizure Case"), seeking

2   to impose liability against Plaintiff under the *Anticounterfeiting*

3   *Consumer Protection Act of 1996*. The CBP assessed a civil fine

4   against Plaintiff in the amount of $644,918.40, calculated based

5   on the retail value of the CAPS. For reasons set forth in more

6   detail below, the fine levied by the CBP in the Customs Case was

7   reduced to a civil judgment in the matter, <u>United States v. Billion</u>

8   <u>International Trading, Inc.</u> (United States District Court for the

9   Northern District of Georgia), case number 1:11-cv-0275-WSD

10  ("Enforcement Action"). A civil judgment for the full penalty

11  amount ($644,918.40), plus interest was entered against Plaintiff.

12

13              **DEFENDANTS' VIOLATION OF THE**

14  **RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT**

15          23.    The Defendants committed three (3) predicate acts

16  giving rise to liability under the Racketeer Influenced Corrupt

17  Organizations Act ("RICO"). The three predicate acts alleged are:

18  (1) mail and (2) wire fraud (18 U.S.C. §§ 1341 and 1342,

19  respectively); and, (3) the trafficking of counterfeit goods (18 U.S.C.

20  § 2320).

21

22                    **Mail & Wire Fraud**

23              **(First and Second Predicate Acts)**

24          24.    Upon information and belief, as early as February 2008

25  but no later than September 2008, Defendants knowingly devised

26  or knowingly participated in a scheme or artifice to defraud

1  Plaintiff or to obtain the money or property of Plaintiff by means

2  of false or fraudulent pretenses, representations or promises.

3     25.    As alleged above, Defendants concocted a scheme or

4  artifice to defraud the Atlanta Braves or to obtain the money or

5  property of the Atlanta Braves by means of false or fraudulent

6  pretenses, representations, or promises. Specifically, Defendants

7  submitted a trademark registration to the USPTO in an attempt

8  to register their Spurious Mark. Plaintiff is informed and believes,

9  and based thereon alleges that USI submitted the trademark

10  registration application to the USPTO on or about September 26,

11  2008.

12     26.    In said filing, Defendants claimed they were the

13  rightful owners of the mark; and, that they lacked knowledge or

14  belief that another person, firm, corporation, or association had

15  the right to use the mark in commerce.

16     27.    The true facts were that Defendants knew that the

17  registration of the Spurious Mark infringed on the intellectual

18  property rights of the Atlanta Braves.

19     28.    Upon information and belief, in or about August 2010,

20  Plaintiff alleges that Defendants engaged in and employed a

21  similar subsequent scheme or artifice to defraud Sunwear Fashion,

22  LLC ("Sunwear"), an apparel retailer located in New York City.

23  Plaintiff alleges Defendants scheme with respect to Sunwear was

24  to obtain and use of its intellectual property by means of false or

25  fraudulent pretenses, representations, or promises.

1    29.    Defendants could foresee and actually used the U.S.

2    Postal Service and interstate wires "for the purpose of" advancing,

3    furthering, executing, concealing, conducting, participating in or

4    carrying out the fraudulent schemes described above, within the

5    meaning of 18 U.S.C. §§ 1341 and 1343.

6

7    A.    *Mail & Wire Fraud With Respect to Plaintiff:*

8        30.    In particular, Defendants knew or could foresee that

9    the U.S. Postal Service and interstate wires would be used to

10   receive and/or deliver, *inter alia*, communications between

11   HASSAN, KAPOOR, and DHINGRA for the purpose of planning

12   and preparing documents to facilitate the fraudulent trademark

13   registration applications; false information, documents, and

14   material related to the purported ownership and legitimacy of the

15   Spurious Mark; false information to Plaintiff regarding (i) their

16   false claims of ownership, and (ii) their efforts to prevent or delay

17   Plaintiff's discovery of the continuing administrative and legal

18   proceedings against its resulting in prejudice to it; and, the

19   submission of the trademark registration application, which made

20   the following willful false statements: (1) that USI was the owner

21   of the mark; (2) that it believed that it was entitled to use such

22   mark in commerce; (3) that it lacked knowledge or belief that

23   another person, firm, corporation, or association has the right to

24   use the mark in commerce, either in the <u>identical</u> form thereof or

25   in such near resemblance thereto as to be likely, when used or in

26   connection with the goods/services of such other person, to cause

1   confusion, or to cause mistake, or to deceive (underline added); (4)

2   that all statements made of personal knowledge were true; and (5)

3   that all statements made of information and belief were believed

4   to be true.

5       31.   Plaintiff further alleges that Defendants submitted

6   said registration statement with actual knowledge that the subject

7   mark was associated with, and the intellectual property of the

8   Atlanta Braves. Both defendant USI and HASSAN reside and

9   operate in DeKalb County, Georgia. HASSAN is a resident of

10   DeKalb County. Defendant USI's principal place of business

11   located at 5317 Buford Highway NE, DeKalb County, Georgia.

12   According to the DeKalb County website, DeKalb County consists

13   of "a portion of Atlanta, Avondale Estates, Chamblee, Decatur [. . .]

14   and several unincorporated areas"[1] (underline added). By virtue of

15   HASSAN and USI's close proximity to the City of Atlanta, home to

16   the Atlanta Braves MLB sports franchise, Plaintiff alleges that

17   defendants knew at all relevant times hereto that they had no

18   rightful or good faith claim to ownership of the Spurious Mark.

19

20   / / /

21

22   / / /

23

---

[1]  http://www.co.dekalb.ga.us/portals/about-us/index.html (last
accessed March 8, 2013)

1    B.    *Mail & Wire Fraud With Respect to Sunwear Fashion*

2        32.    Sunwear filed a complaint in the United States District

3    Court for the Southern District of New York on April 3, 2012.[2] It

4    alleges seven (7) claims for relief. All claims for relief relate to or

5    arise from the Defendants' counterfeiting of Sunwear's proprietary

6    trademarks and copyrights.

7        33.    Similar to Defendants' attempt to register the Spurious

8    Mark, Defendants filed a trademark registration application to

9    register a mark they knew to be owned and registered by Sunwear.

10       34.    Defendants knew or could foresee that the U.S. Postal

11   Service and interstate wires would be used to receive and/or

12   deliver, *inter alia*, communications between HASSAN, KAPOOR,

13   and DHINGRA for the purpose of planning and preparing

14   documents to facilitate the fraudulent trademark registration

15   applications; false information, documents, and material related

16   to the purported ownership of Sunwear's trademark; and, the

17   submission of the trademark registration application, which made

18   the following willful false statements: (1) that TANU was the

19   owner of the mark; (2) that it believed that it was entitled to use

20   such mark in commerce; (3) that it lacked knowledge or belief that

21   another person, firm, corporation, or association has the right to

22   use the mark in commerce, either in the <u>identical</u> form thereof or

23   in such near resemblance thereto as to be likely, when used or in

---

[2] *See* Plaintiff's Request for Judicial Notice (Docket No. 27), filed January 27, 2013.

1    connection with the goods/services of such other person, to cause

2    confusion, or to cause mistake, or to deceive; (4) that all

3    statements made of personal knowledge were true; and (5) that all

4    statements made of information and belief were believed to be

5    true.

6        35.    Sunwear's complaint alleges that defendants then

7    proceeded to manufacture, sell, and distribute counterfeit goods

8    bearing Sunwear's mark without license or authorization.

9        36.    As illustrated by the factual allegations above,

10    Defendants, acting singly and in concert, personally or through

11    their agents and co-conspirators, used the U.S. Postal Service or

12    interstate wires to be used "for the purpose of" advancing,

13    furthering, executing concealing, conducting, participating in, or

14    carrying out a scheme to defraud Plaintiff, within the meaning of

15    18 U.S.C. §§ 1341 and 1343. Plaintiff alleges that Defendants

16    submitted the trademark registration applications containing

17    intentional and known misrepresentations to the USPTO for the

18    purpose of creating and using false records as an instrument to

19    further their fraudulent scheme to defraud their victims.

20        37.    Plaintiff is unable to plead with particularity all

21    instances of mail and wire fraud that advanced, furthered,

22    executed, and concealed the fraudulent scheme described herein

23    because the particulars of many such communications are within

24    the exclusive control and within the exclusive knowledge of the

25    individual defendants HASSAN, KAPOOR, and DHINGRA, and

26    possibly other individuals presently unknown to Plaintiff.

38.   Each and every use of the U.S. Postal Service or Interstate wires described above was committed by HASSAN, KAPOOR, and DHINGRA with the specific intent to further the fraudulent scheme described above and defraud Plaintiff or for obtaining the money or property of Plaintiff by means of false or fraudulent pretense, representations, or promises. HASSAN's, KAPOOR's, DHINGRA's, TANU's, and USI's acts of mail and wire fraud in violation of 18 U.S.C. sections 1341 and 1343 constitute racketeering activity as defined in 18 U.S.C. section 1961, subsection (1)(B).

39.   Plaintiff (and its rightful agents) justifiably relied on defendants' fraudulent representations and omissions made pursuant to the above-described scheme in that, *inter alia*, Plaintiff's principals are Chinese nationals ignorant of American baseball teams; Plaintiff's principals possess limited English speaking and reading skills; and, Plaintiff's principals' had very limited experience with the American judicial and administrative processes.

## Trafficking of Goods Bearing Counterfeit Marks
### (Third Predicate Act)

40.   The second predicate act exposing Defendants to liability under RICO is their trafficking of goods bearing counterfeit marks.

41.   Defendants devised and intended to devise a scheme or artifice to defraud and obtain Plaintiff's money or property, and

1   Sunwear's intellectual property, by false pretenses,

2   misrepresentations, or false promises. Defendants, and each of

3   them, intentionally trafficked in goods knowingly using a

4   counterfeit mark on and in connection with said goods, or

5   attempted or conspired to do the same.

6       42.   Defendants' Spurious Mark is a "counterfeit mark",

7   within the meaning of 18 U.S.C. § 2320(f)(1). Plaintiff alleges that

8   Defendants knew that the Spurious Mark to be a counterfeit mark,

9   in that Defendants knew that it infringed on the trademark

10  registered, owned, and affiliated with the Atlanta Braves.

11      43.   In furtherance of their racketeering activities,

12  Defendants transported, transferred, or otherwise disposed of, to

13  another, for purposes of commercial advantage or private financial

14  gain, or to make, import, export, obtain control of, or possess, with

15  intent to so transport, transfer, or otherwise dispose of said

16  counterfeit goods, within the meaning of "traffic" under 18 U.S.C.

17  § 2320(f)(5).

18      44.   DHINGRA's participation was instrumental in

19  furthering Defendants conspiracy and fraudulent scheme. Upon

20  information and belief, Plaintiff alleges that DHINGRA agreed to

21  participate in the alleged conspiracy. DHINGRA's caused his law

22  office to file fraudulent trademark registration applications with

23  the USPTO on behalf of Defendants as an overt act in furtherance

24  of the alleged conspiracy.

25      45.   With respect to Plaintiff's liability from the

26  Enforcement Action, defendants' active concealment and

27  suppression of material facts, coupled with their active

1   misrepresentations and filing of spurious trademark registration

2   applications with the USPTO resulted in the manufacturing of the

3   CAPS; the attempted importation of goods bearing counterfeit

4   marks; and, civil fines and the subsequent entry of default

5   judgment, all to Plaintiff's detriment.

6       46.   With respect to Sunwear, on or about August 9, 2010,

7   Sunwear discovered that Defendants had, without authorization

8   or license, created a counterfeit version of Sunwear's proprietary

9   trade dress and copyright logo. USPTO online records indicate

10  that Defendants submitted a trademark application (Application

11  No. 85143716) to register the trademark they knew to be owned

12  by Sunwear on or about October 2, 2010. (Docket No. 27, p.11, ¶

13  50). Sunwear also alleged that Defendants actually trafficked in

14  goods that bore an exact duplicate of Sunwear's trade dress and

15  copyrighted logo, replacing the Sun Wear mark with "Tanu

16  Harlem U.S.A." (Docket No. 27, p. 10, ¶ 32). Defendants' used a

17  "counterfeit mark", within the meaning of 18 U.S.C. § 2320(f)(1),

18  in connection with the sale of said unauthorized  goods.

19      47.   At all relevant times mentioned herein, Plaintiff

20  alleges that Defendants knew that the mark submitted with

21  trademark registration application number 85143716 was

22  previously registered and owned by Sunwear. Defendants knew

23  that the submitted registration application as well as the

24  unauthorized use of Sunwear's mark infringed on the trademark

25  registered, owned, and affiliated with Sunwear Fashion, LLC.

26

27

---

1                **FIRST CLAIM FOR RELIEF**

2     **FRAUDULENT MISREPRESENTATION AND SUPPRESSION**

3                **OF MATERIAL FACTS**

4                **(Against All Defendants)**

5

6        48.     Plaintiff re-alleges each and every allegation set forth

7 in paragraphs 1 through 47 above, inclusive, and incorporates

8 them by reference as though fully set forth herein.

9        49     On or about the dates specifically alleged, defendants,

10 by and through HASSAN and KAPOOR as officers or directors, or

11 directors acting as officers of USI and TANU, misrepresented

12 certain material facts to Plaintiff and concealed other material

13 facts from Plaintiff. Regarding the concealed material facts, such

14 concealed facts materially qualified the actual facts disclosed or

15 were likely to mislead; and, were known or accessible only to

16 Defendants, who knew that such facts were not known or

17 reasonably discoverable by Plaintiff, and which facts were actively

18 concealed from Plaintiff. The misrepresentations made and

19 material facts concealed and suppressed were as follows:

20

21 A.      <u>Misrepresentations and Suppression of Material Facts to</u>

22         <u>Plaintiff Concerning the CAPS.</u>

23

24        50.     In or about September 2008, HASSAN provided

25 Plaintiff with a sample of the stylized "A" defendants desired to

26 have embroidered on the CAPS. In connection with said logo,

27 Defendants, through their agent and co-conspirator HASSAN,

1   represented that they designed the stylized "A" logo. Defendants

2   also assured Plaintiff that the mark did not infringe on the

3   intellectual property rights of others. To support their claims of

4   legitimacy and authenticity, Defendants stated that an

5   application to register the subject mark had been submitted to the

6   USPTO. Plaintiff, whose principals are Chinese business persons

7   who are not familiar with American baseball teams nor fans of the

8   American past time, did not know that the requested logo

9   infringed on the Atlanta Braves' intellectual property rights. Nor

10  did Plaintiff or is principals have any reason to doubt the veracity

11  of Defendants' statements.

12        51.   Upon information and belief, Plaintiff alleges that, at

13  all relevant times hereto, Defendants knew that they did not have

14  a good faith claim of ownership to the stylized "A" logo they

15  requested embroidered on the front of the CAPS; that they did not

16  submit the trademark registration application to the USPTO in

17  good faith; and, actually knew that the logo infringed on the

18  Atlanta Braves registered trademark.

19        52.   Plaintiff alleges that DHINGRA and the LAW

20  OFFICES OF HARISH DHINGRA & ASSOCIATES agreed to

21  participate in the conspiracy concocted by HASSAN and KAPOOR,

22  and did participate in said conspiracy by filing fraudulent

23  trademark registration applications to the USPTO on behalf and

24  for the benefit of Defendants and in furtherance of said conspiracy.

25        53.   Plaintiff further alleges that, at all relevant times

26  hereto, defendants made said misrepresentations with the intent

27  to induce Plaintiff into unwittingly manufacture CAPS that

1   violated the intellectual property rights of the Atlanta Braves and
2   the laws of the United States.

3        54.    Plaintiff would not have entered into the purchase
4   agreements, nor caused the CAPS to be manufactured had it
5   known the true facts.

6

7   B.    <u>Misrepresentations and Suppression of Material Facts</u>
8        <u>Concerning the Customs Case and Enforcement Action.</u>

9

10       55.    Immediately following the seizure of the CAPS in or
11  about December 2008, Plaintiff notified Defendants of said seizure
12  by the CBP. HASSAN and HARLEM represented to Plaintiff that
13  they would make all efforts to resolve the issues in a way
14  favorable to all parties.

15       56.    Plaintiff is further informed and believes, and based
16  thereon alleges that MLB contacted Defendants regarding their
17  attempt to register the Spurious Mark, noting that it appeared to
18  be identical to the Atlanta Braves logo.

19       57.    Beginning in or about January 2009 and through
20  February 2009, Defendants provided Plaintiff with copies of
21  correspondence between themselves and their counsel, Joseph A.
22  Paparella of Paparella & Associates PC, in relation to the dialogue
23  and resolution of the matter with MLB. Defendants provided said
24  copies of correspondence to Plaintiff as support that all claims
25  relating to the CAPS had been resolved.

26       58.    In early February 2009, Plaintiffs received
27  correspondence from the CBP. On or about February 13, 2009, at

1    Defendants' request, Plaintiff forwarded to them a letter it
2    received from CBP advising of the seizure and the infringing
3    nature of the merchandise, and an informational document
4    entitled "Notice of Seizure and Information for Claimants Form
5    AF." This correspondence explained the options available to
6    Plaintiff in regard to the remission of the forfeited property.
7    HASSAN stated and assured Plaintiff that he and the other
8    Defendants would take care of the matter.

9        59.    Relying on defendants' misrepresentations, Plaintiff
10   was induced to refrain from taking further legal action, believing
11   that all issues relating to the CAPS were resolved by Defendants
12   or would be resolved by Defendants in manner favorable to all.

13       60.    Then, in or about June 2009, Plaintiff received a
14   Declaration of Administrative Forfeiture for Seizure Number
15   2009-1704-000082-01. Believing that all issues relating to the
16   CAPS were resolved, Plaintiff was surprised to learn of continuing
17   legal proceedings against it and immediately contacted
18   Defendants. Defendants feigned surprise at the pending action. At
19   their request, Plaintiff forwarded said correspondence to
20   Defendants on or about June 12, 2009. Defendants assured
21   Plaintiff that they would contact the necessary authorities and
22   take care of the matter. Defendants requested that Plaintiff
23   continue to forward any and all correspondence it received
24   relating to the CAPS to them. Defendants promised, in turn, that
25   they would take all necessary actions to resolve the claim.

26       61.    Several months later, Plaintiff received a notice and
27   demand for payment of the civil fine of $644,918.40 from the CBP.

1   The notice provided information relating to the procedure for

2   filing a petition for relief and stated that the matter would be

3   referred to the United States Attorney's office if Plaintiff failed to

4   address the fine.

5       62.    Plaintiff again immediately forwarded said

6   correspondence to defendants, relying on their prior assurances

7   and representations that they would handle the matter.

8   Unbeknownst to Plaintiff, Defendants took no action and the fine

9   became due and owing on or about November 10, 2009.

10      63.    Plaintiff is informed and believes, and based thereon

11  alleges that Defendants actually had no intention of resolving

12  Customs Case or the Enforcement Action in a manner favorable to

13  all. Plaintiff further alleges that Defendants actively suppressed

14  material facts relating to the CBP's continuing efforts to enforce

15  the fines levied against Plaintiff.

16      64.    Plaintiff is informed and believes, and based thereon

17  alleges that Defendants actively concealed or suppressed material

18  facts relating to CBP's ongoing efforts to enforce the civil fines

19  levied against Plaintiff. Defendants concealed or suppressed

20  material facts by tell telling plaintiff other facts to mislead it and

21  prevent plaintiff from discovering the concealed or suppressed

22  facts.

23      65.    Plaintiff is further informed and believes, and based

24  thereon alleges that Defendants' misrepresentations and

25  suppression of material facts are part of a scheme and conspiracy

26  concocted and entered into by each named defendant to violate the

27  intellectual property rights of others by claiming to have rights or

1    interests in trademarks or logos when they did not. Defendants
2    made said misrepresentations to induce foreign suppliers, such as
3    Plaintiff, to unknowingly manufacture goods with spurious
4    trademarks or labels affixed thereto.

5        66.    Defendants' misrepresentations were intentional; or,
6    alternatively, made recklessly or without regard for their truth
7    made with the intent to defraud and induce Plaintiff to refrain
8    from taking any legal action in relation to the CAPS.

9        67.    Furthermore, Defendants concealed or suppressed
10   material facts relating to the CBP's continuing efforts to enforce
11   the fines levied against Plaintiff to discourage and prevent
12   Plaintiff from mounting defenses in the Customs Case that might
13   have resulted in a finding that defendants were primarily liable
14   for the imported counterfeit goods.

15       68.    At the time Plaintiff refrained from taking action,
16   Plaintiff was unaware of the concealed or suppressed facts and
17   would not have refrained from taking legal action had plaintiff
18   known the true facts.

19       69.    As a direct and proximate result of the defendants'
20   fraudulent scheme and concealment or suppression of material
21   facts, Plaintiff has been damaged in an amount no less than the
22   judgment entered in the Customs Case, and all other damages
23   according to proof at trial, but in no event a sum no less than
24   $ 753,196.00.

25       70.    Plaintiff is informed and believes and based thereon
26   alleges that the actions of defendants, and each of them, were (1)
27   fraudulent, meaning an intentional misrepresentation, deceit, or

1   concealment of material fact known to the defendants with the
2   intention on the part of defendants of thereby depriving plaintiff
3   of property or legal rights, or otherwise causing injury; (2)
4   malicious, meaning conduct which is intended by the defendants
5   to cause injury to plaintiff, or despicable conduct which is carried
6   on by the defendant with a willful and conscious disregard of the
7   rights or safety of others; (3) and/or oppressive, meaning
8   despicable conduct that subjects a person to cruel and unjust
9   hardship in conscious disregard of that person's rights; and, done
10  with the intention of depriving Plaintiff of substantial rights. The
11  actions of the corporate defendants controlled and influenced by
12  and through each individual defendant with the knowledge,
13  approval or ratification of said corporate defendants. Plaintiff is
14  therefore entitled to punitive damages in a sufficient amount to
15  make punish defendants, and make an example of defendants to
16  deter future similar fraudulent, oppressive, and malicious
17  misconduct in an amount according to proof at trial.
18
19              **SECOND CLAIM FOR RELIEF**
20           **IMPLIED CONTRACTUAL INDEMNITY**
21        **(Against Defendants USI, TANU, HASSAN, KAPOOR**
22                  **and DOES 1 through 20)**
23          80.    Plaintiff re-alleges each and every allegation set forth
24  in paragraphs 1 through 79 above, inclusive, and incorporates
25  them by reference as though fully set forth herein.
26          81.    On or about September 18, 2008, Plaintiff and TANU
27  entered into a written contract whereby Plaintiff agreed to supply

1  defendant with the CAPS (with the requested logo affixed) for the

2  purchase price of $35,868.80. Plaintiff alleges that TANU

3  negotiated and executed this contract as the agent, co-conspirator,

4  and for the benefit of Defendants USI, HASSAN, and KAPOOR.

5  A true and correct copy of the purchase order is attached hereto as

6  Exhibit "A" and hereinafter incorporated by reference.

7      82.   Paragraph 3 of the written contract specifies that

8  "Buyers are to assume full responsibilities for any consequences

9  arising from (a) the use of labels, designs, or patterns of this

10  contract [. . .]."

11     83.   On or about August 18, 2011, the United States of

12  America brought an action against plaintiff herein in the United

13  States District Court for the Northern District of Georgia, case

14  number 1:11-cv-02753-WSD ("Enforcement Action"), to enforce the

15  civil fines levied against plaintiff in relation to Seizure Case No.:

16  2009-1704-000082-01 brought by the CBP.

17     84.   Relying on the Defendants' continuing fraudulent

18  representations and their active suppression or concealment of

19  material facts, Plaintiff failed to timely appear in the Enforcement

20  Action. Accordingly, the Government moved for entry of default

21  judgment, which that court granted on or about September 28,

22  2011. Judgment was entered against Plaintiff in the amount of

23  $ 684,620.48 plus interest at the rate of .1% compounded annually.

24  By reason of this judgment, on or about April 5, 2012, the

25  Government executed a writ and levied $33,442.91 from Plaintiff's

26  bank account at East West Bank in El Monte, California.

85.   On or about April 5, 2012, the United States District Court for the Northern District of Georgia assessed a surcharge of ten percent (10%) of $684,726.64 for the amount of $68,472.36 against Plaintiff.

86.   The monies recovered by the Government against Plaintiff were caused primarily and ultimately by Defendants' breach of its contract with Plaintiff in misrepresenting the legitimacy of the requested mark. Plaintiff's liability for these damages arose, not as a result of any actual fault on its part, but solely by operation of law, arising from Plaintiff's designation as the ultimate consignee and importer of record.

87.   By reason of the foregoing, Plaintiff is entitled to indemnity from defendants for the judgment and surcharge added for a sum of $ 753,196.00.

## THIRD CAUSE OF ACTION
## EQUITABLE INDEMNITY
### (Against All Defendants)

87.   Plaintiff re-alleges each and every allegation set forth in paragraphs 1 through 86 above, inclusive, and incorporates them by reference as though fully set forth herein.

88.   On or about August 18, 2011, the United States of America brought an action against plaintiff herein in the United States District Court for the Northern District of Georgia, case number 1:11-cv-02753-WSD ("Enforcement Action"), to enforce the civil fines levied against plaintiff in relation to Seizure Case No.: 2009-1704-000082-01 brought by the CBP.

89.    Relying on the defendants' continuing fraudulent scheme and the defendants' active suppression or concealment of material facts, Plaintiff failed to timely appear in the Enforcement Action. Accordingly, the Government moved for entry of default judgment, which that court granted on or about September 28, 2011. Judgment was entered against Plaintiff in the amount of $ 684,620.48 plus interest at the rate of .1% compounded annually.

90.    Plaintiff alleges that it is in no way legally responsible for the events giving rise to the Customs Case and the administrative fine levied against it. Instead, Plaintiff alleges that defendants, and each of them, were negligent, misrepresented or suppressed material facts, and breached the written contract identified above, resulting in the administrative fine levied against Plaintiff by the CBP. The above alleged acts of the defendants, and each of them, were the proximate cause of the fine levied against Plaintiff and the subsequent civil judgment.

91.    Defendants, and each of them, are jointly and severally liable for any such damages in direct proportion with the extent of damages caused by the conduct alleged above according to proof at trial, but in no event less than $753,196.00.

/ / /

/ / /

/ / /

# FOURTH CLAIM FOR RELIEF
## RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT
### COUNT ONE
### VIOLATION OF 18 U.S.C. § 1962(b):
### Acquisition and Maintenance of an Interest In and Control of an Enterprise Engaged in a Pattern of Racketeering Activity
### (Against All Defendants)

92.     Plaintiff re-alleges each and every allegation set forth in paragraphs 1 through 91 above, inclusive, and incorporates them by reference as though fully set forth herein.

93.     At some time between February 2008 and April 2012 (at a minimum), Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of an enterprise which is engaged in, or the activities of which, affected interstate or foreign commerce, in violation of 18 U.S.C. § 1962(b).

94.     Some or all of the following individuals and entities (or any combination thereof) constituted an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(b), in that they were a "group of individuals associated in fact": HASSAN, KAPOOR, USI, TANU, DHINGRA, and DHINGRA FIRM.

(a)     HASSAN is a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or maintain, directly or indirectly, an interest in or control of said enterprise.

(b)     KAPOOR is a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or

1    maintain, directly or indirectly, an interest in or

2    control of said enterprise.

3    (c)    DHINGRA is a "person," within the meaning of

4    18 U.S.C. §§ 1961(3) and 1962(b), who did acquire

5    and/or maintain, directly or indirectly, an interest in

6    said enterprise.

7    (d)   USI is a "person," within the meaning of 18 U.S.C.

8    §§ 1961(3) and 1962(b), who did acquire and/or

9    maintain, directly or indirectly, an interest in or

10   control of said enterprise.

11   (e)    TANU is a "person," within the meaning of 18

12   U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or

13   maintain, directly or indirectly, an interest in or

14   control of said enterprise.

15   (f)    DHINGRA FIRM is a "person," within the

16   meaning of 18 U.S.C. §§ 1961(3) and 1962(b), who did

17   acquire and/or maintain, directly or indirectly, an

18   interest in or control of said enterprise.

19   (g)    At some time between February 2008 and April

20   2012 (at a minimum), Defendants, each of them, did

21   acquire and/or maintain, directly or indirectly, an

22   interest in or control of said enterprise which is

23   engaged in, or the activities of which, affected

24   interstate or foreign commerce, in violation of 18 U.S.C.

25   § 1962(b).

26

27   / / /

95.   Alternatively, between February 2008 and April 2012 (at a minimum), the following corporation constituted the RICO "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(b), and as recognized in *U.S. v. Feldman*, 853 F.2d 648, 655 (9th Cir. 1988): USI.

(a)   HASSAN is a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or maintain, directly or indirectly, an interest in or control of USI. HASSAN is an officer and shareholder of USI.

(b)   KAPOOR is a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or maintain, directly or indirectly, an interest in or control of USI. KAPOOR is an officer, director, and shareholder of USI.

(c)   DHINGRA is a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or maintain, directly or indirectly, an interest in said enterprise.

(d)   TANU is a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or maintain, directly or indirectly, an interest in or control of said enterprise.

(e)   DHINGRA FIRM is a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or maintain, directly or indirectly, an interest in or control of said enterprise.

1          (f)     At some time between February 2008 and April

2          2012 (at a minimum), Defendants, each of them, did

3          acquire and/or maintain, directly or indirectly, an

4          interest in or control of said enterprise.

5      96.    Alternatively, between February 2008 and April 2012

6 (at a minimum), the following corporation constituted the RICO

7 "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and

8 1962(b), and as recognized in *U.S. v. Feldman*, 853 F.2d 648, 655

9 (9th Cir. 1988): TANU.

10         (a)     HASSAN is a "person," within the meaning of 18

11         U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or

12         maintain, directly or indirectly, an interest in or

13         control of TANU. HASSAN is an officer and

14         shareholder of TANU.

15         (b)     KAPOOR is a "person," within the meaning of 18

16         U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or

17         maintain, directly or indirectly, an interest in or

18         control of TANU. KAPOOR is an officer, director, and

19         shareholder of TANU.

20         (c)     DHINGRA is a "person," within the meaning of

21         18 U.S.C. §§ 1961(3) and 1962(b), who did acquire

22         and/or maintain, directly or indirectly, an interest in

23         said enterprise.

24         (d)   USI is a "person," within the meaning of 18 U.S.C.

25         §§ 1961(3) and 1962(b), who did acquire and/or

26         maintain, directly or indirectly, an interest in or

27         control of said enterprise.

1    (e)    DHINGRA FIRM is a "person," within the

2    meaning of 18 U.S.C. §§ 1961(3) and 1962(b), who did

3    acquire and/or maintain, directly or indirectly, an

4    interest in or control of said enterprise.

5    (f)    At some time between February 2008 and April

6    2012 (at a minimum), Defendants, each of them, did

7    acquire and/or maintain, directly or indirectly, an

8    interest in or control of said enterprise.

9    97.    Alternatively, between February 2008 and April 2012

10   (at a minimum), the following individual constituted an

11   "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and

12   1962(b): HASSAN.

13   (a)    KAPOOR is a "person," within the meaning of 18

14   U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or

15   maintain, directly or indirectly, an interest in or

16   control of said enterprise.

17   (b)    DHINGRA is a "person," within the meaning of

18   18 U.S.C. §§ 1961(3) and 1962(b), who did acquire

19   and/or maintain, directly or indirectly, an interest in

20   said enterprise.

21   (c)    USI is a "person," within the meaning of 18 U.S.C.

22   §§ 1961(3) and 1962(b), who did acquire and/or

23   maintain, directly or indirectly, an interest in or

24   control of said enterprise.

25   (d)    TANU is a "person," within the meaning of 18

26   U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or

1    maintain, directly or indirectly, an interest in or
2    control of said enterprise.

3    (e)    DHINGRA FIRM is a "person," within the
4    meaning of 18 U.S.C. §§ 1961(3) and 1962(b), who did
5    acquire and/or maintain, directly or indirectly, an
6    interest in or control of said enterprise.

7    (f)    At some time between February 2008 and April
8    2012 (at a minimum), Defendants, each of them, did
9    acquire and/or maintain, directly or indirectly, an
10   interest in or control of said enterprise.

11   98.    Alternatively, between February 2008 and April 2012
12   (at a minimum), the following individual constituted an
13   "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and
14   1962(b): KAPOOR.

15   (a)    HASSAN is a "person," within the meaning of 18
16   U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or
17   maintain, directly or indirectly, an interest in or
18   control of said enterprise.

19   (b)    DHINGRA is a "person," within the meaning of
20   18 U.S.C. §§ 1961(3) and 1962(b), who did acquire
21   and/or maintain, directly or indirectly, an interest in
22   said enterprise.

23   (c)    USI is a "person," within the meaning of 18 U.S.C.
24   §§ 1961(3) and 1962(b), who did acquire and/or
25   maintain, directly or indirectly, an interest in or
26   control of said enterprise.

1      (d)   TANU is a "person," within the meaning of 18

2      U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or

3      maintain, directly or indirectly, an interest in or

4      control of said enterprise.

5      (e)   DHINGRA FIRM is a "person," within the

6      meaning of 18 U.S.C. §§ 1961(3) and 1962(b), who did

7      acquire and/or maintain, directly or indirectly, an

8      interest in or control of said enterprise.

9      (f)   At some time between February 2008 and April

10     2012 (at a minimum), Defendants, each of them, did

11     acquire and/or maintain, directly or indirectly, an

12     interest in or control of said enterprise.

13     99.   Alternatively, between February 2008 and April 2012

14  (at a minimum), the following individual constituted an

15  "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and

16  1962(b): DHINGRA.

17     (a)   HASSAN is a "person," within the meaning of 18

18     U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or

19     maintain, directly or indirectly, an interest in or

20     control of said enterprise.

21     (b)   KAPOOR is a "person," within the meaning of 18

22     U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or

23     maintain, directly or indirectly, an interest in said

24     enterprise.

25     (c)   USI is a "person," within the meaning of 18 U.S.C.

26     §§ 1961(3) and 1962(b), who did acquire and/or

1    maintain, directly or indirectly, an interest in or

2    control of said enterprise.

3        (d)   TANU is a "person," within the meaning of 18

4    U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or

5    maintain, directly or indirectly, an interest in or

6    control of said enterprise.

7        (e)   DHINGRA FIRM is a "person," within the

8    meaning of 18 U.S.C. §§ 1961(3) and 1962(b), who did

9    acquire and/or maintain, directly or indirectly, an

10    interest in or control of said enterprise.

11        (f)   At some time between February 2008 and April

12    2012 (at a minimum), Defendants, each of them, did

13    acquire and/or maintain, directly or indirectly, an

14    interest in or control of said enterprise.

15    100.  Alternatively, between February 2008 and April 2012

16 (at a minimum), the following individual constituted an

17 "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and

18 1962(b), and as recognized in *U.S. v. Feldman*, 853 F.2d 648, 655

19 (9th Cir. 1988): LAW OFFICES OF HARISH DHINGRA &

20 ASSOCIATES.

21        (a)   HASSAN is a "person," within the meaning of 18

22    U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or

23    maintain, directly or indirectly, an interest in or

24    control of said enterprise.

25        (b)   KAPOOR is a "person," within the meaning of 18

26    U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or

1   maintain, directly or indirectly, an interest in or
2   control of said enterprise.
3   (c)   DHINGRA is a "person," within the meaning of
4   18 U.S.C. §§ 1961(3) and 1962(b), who did acquire
5   and/or maintain, directly or indirectly, an interest in
6   said enterprise. DHINGRA is the principal of
7   DHINGRA FIRM.
8   (d)   USI is a "person," within the meaning of 18 U.S.C.
9   §§ 1961(3) and 1962(b), who did acquire and/or
10   maintain, directly or indirectly, an interest in or
11   control of said enterprise.
12   (e)   TANU is a "person," within the meaning of 18
13   U.S.C. §§ 1961(3) and 1962(b), who did acquire and/or
14   maintain, directly or indirectly, an interest in or
15   control of said enterprise.
16   (f)   At some time between February 2008 and April
17   2012 (at a minimum), Defendants, each of them, did
18   acquire and/or maintain, directly or indirectly, an
19   interest in or control of said enterprise.
20   101.   At all relevant times herein, the enterprises alleged in
21   paragraphs 94 through 100 (*supra*) were engaged in, and their
22   activities affected, interstate commerce and foreign commerce.
23   102.   All of the acts of racketeering described in paragraphs
24   24 through 47, *supra*, were related so as to establish a "pattern of
25   racketeering activity," within the meaning of 18 U.S.C, § 1962(b),
26   in that their common purpose was to defraud Plaintiff of money
27   and property and the common result was the defrauding of

1    Plaintiff resulting in the loss of money and property; HASSAN,
2    KAPOOR, USI, TANU, DHINGRA, and DHINGRA FIRM
3    KAPOOR, did acquire and/or maintain, directly or indirectly, an
4    interest in or control of an enterprise engaged in a pattern of
5    racketeering; Plaintiff was the victim of the acts of racketeering;
6    and/or the acts of racketeering were otherwise interrelated by
7    distinguishing characteristics and were not isolated events.
8         103.  All of the acts of racketeering described in paragraphs
9    24 through 47, *supra*, were continuous as to form a pattern of
10   racketeering activity in that defendants engaged in the predicate
11   acts over a substantial period of time; or, in that defendants'
12   efforts of racketeering were an extension of HASSAN and
13   KAPOOR's illegal efforts to acquire intellectual property
14   belonging to others through fraudulent and surreptitious means
15   assisted by DHINGRA. Defendants' acts of racketeering
16   threatened to continue indefinitely and would have continued
17   indefinitely but for the intervention of Sunwear and the CBP.
18        104.  As a direct and proximate result of, and by reason of,
19   the activities of defendants, and their conduct in violation of 18
20   U.S.C. § 1962(b), Plaintiff was injured in its business and property,
21   within the meaning of 18 U.S.C. § 1964(c). Among other things,
22   Plaintiff suffered damages to the extent that the CBP levied fines
23   and penalties against it which were later reduced to a civil
24   judgment; to the extent Plaintiff incurred legal fees to set aside
25   the judgment entered by the District Court for the Northern
26   District of Georgia. Plaintiff suffered further damages to the
27   extent the Government executed writs of garnishment from

1  Plaintiff's bank accounts. Plaintiff is, therefore, entitled to recover

2  treble damages it sustained together with the cost of suit,

3  including costs, reasonable attorneys' fees and reasonable experts'

4  fees.

5

6  RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT

7  COUNT TWO

8  VIOLATION OF 18 U.S.C. § 1962(c):

9  Conduct and Participation in a RICO Enterprise Engaged in a

10  Pattern of Racketeering Activity

11

12  105.  Plaintiff re-alleges each and every allegation set forth

13  in paragraphs 1 through 104 above, inclusive, and incorporates

14  them by reference as though fully set forth herein.

15  106.  Between February 2008 and April 2012 (at a

16  minimum), some or all of the following individuals and entities (or

17  any combination thereof) constituted an "enterprise," within the

18  statutory definition of 18 U.S.C. §§ 1961(4) and 1962(c), in that

19  they were a "group of individuals associated in fact": HASSAN,

20  KAPOOR, USI, TANU, DHINGRA, and DHINGRA FIRM.

21          (a)     HASSAN is a "person," within the meaning of 18

22          U.S.C. §§ 1961(3) and 1962(c), who individually

23          associated with and/or participated in the conduct of

24          said enterprise's affairs.

25          (b)     KAPOOR is a "person," within the meaning of 18

26          U.S.C. §§ 1961(3) and 1962(c), who individually

1    associated with and/or participated in the conduct of
2    said enterprise's affairs.
3    (c)    DHINGRA is a "person," within the meaning of
4    18 U.S.C. §§ 1961(3) and 1962(c), who individually
5    associated with and/or participated in the conduct of
6    said enterprise's affairs.
7    (d)   USI is a "person," within the meaning of 18 U.S.C.
8    §§ 1961(3) and 1962(b), within the meaning of 18 U.S.C.
9    §§ 1961(3) and 1962(c), who individually associated
10    with and/or participated in the conduct of said
11    enterprise's affairs.
12    (e)    TANU is a "person," within the meaning of 18
13    U.S.C. §§ 1961(3) and 1962(c), who individually
14    associated with and/or participated in the conduct of
15    said enterprise's affairs.
16    (g)    DHINGRA FIRM is a "person," within the
17    meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who
18    individually associated with and/or participated in the
19    conduct of said enterprise's affairs.
20    (h)    Between February 2008 and April 2012 (at a
21    minimum), HASSAN and KAPOOR individually
22    conducted, participated in, engaged in, and operated
23    and managed the affairs of the enterprise through a
24    pattern of racketeering activity within the meaning of
25    18 U.S.C. §§ 1961(1), 1961(5), and 1962(c). HASSAN
26    AND KAPOOR's pattern of racketeering activity
27    consisted of the acts of mail and wire fraud (described

1      in paragraphs 24 – 39, *supra*), and the trafficking of

2      counterfeit goods (described in paragraphs 40 – 47,

3      *supra*).

4          (i)      Between February 2008 and April 2012 (at a

5      minimum), DHINGRA and DHINGRA FIRM

6      individually conducted, participated in, engaged in,

7      and operated and managed the affairs of the enterprise

8      through a pattern of racketeering activity within the

9      meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c).

10     DHINGRA and DHINGRA FIRM's pattern of

11     racketeering activity consisted of the acts of mail and

12     wire fraud (described in paragraphs 24 – 39, *supra*),

13     and the trafficking of counterfeit goods (described in

14     paragraphs 40 – 47, *supra*).

15     107.  Alternatively, between February 2008 and April 2012

16  (at a minimum), the following individual constituted an

17  "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and

18  1962(c): HASSAN.

19         (a)      KAPOOR is a "person," within the meaning of 18

20     U.S.C. §§ 1961(3) and 1962(c), who individually

21     associated with and/or participated in the conduct of

22     said enterprise's affairs.

23         (b)      DHINGRA is a "person," within the meaning of

24     18 U.S.C. §§ 1961(3) and 1962(c), who individually

25     associated with and/or participated in the conduct of

26     said enterprise's affairs.

1    (d)    USI is a "person," within the meaning of 18 U.S.C.
2    §§ 1961(3) and 1962(b), within the meaning of 18 U.S.C.
3    §§ 1961(3) and 1962(c), who individually associated
4    with and/or participated in the conduct of said
5    enterprise's affairs.
6    (e)    TANU is a "person," within the meaning of 18
7    U.S.C. §§ 1961(3) and 1962(c), who individually
8    associated with and/or participated in the conduct of
9    said enterprise's affairs.
10   (g)    DHINGRA FIRM is a "person," within the
11   meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who
12   individually associated with and/or participated in the
13   conduct of said enterprise's affairs.
14   (h)    Between February 2008 and April 2012 (at a
15   minimum), KAPOOR individually conducted,
16   participated in, engaged in, and operated and managed
17   the affairs of the enterprise through a pattern of
18   racketeering activity within the meaning of 18 U.S.C.
19   §§ 1961(1), 1961(5), and 1962(c). KAPOOR's pattern of
20   racketeering activity consisted of the acts of mail and
21   wire fraud (described in paragraphs 24 – 39, *supra*),
22   and the trafficking of counterfeit goods (described in
23   paragraphs 40 – 47, *supra*).
24   (i)    Between February 2008 and April 2012 (at a
25   minimum), DHINGRA and DHINGRA FIRM
26   individually conducted, participated in, engaged in,
27   and operated and managed the affairs of the enterprise

1    through a pattern of racketeering activity within the

2    meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c).

3    DHINGRA and DHINGRA FIRM's pattern of

4    racketeering activity consisted of the acts of mail and

5    wire fraud (described in paragraphs 24 – 39, *supra*),

6    and the trafficking of counterfeit goods (described in

7    paragraphs 40 – 47, *supra*).

8        108.   Alternatively, between February 2008 and April 2012

9  (at a minimum), the following individual constituted an

10  "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and

11  1962(c): KAPOOR.

12        (a)    HASSAN is a "person," within the meaning of 18

13    U.S.C. §§ 1961(3) and 1962(c), who individually

14    associated with and/or participated in the conduct of

15    said enterprise's affairs.

16        (b)    DHINGRA is a "person," within the meaning of

17    18 U.S.C. §§ 1961(3) and 1962(c), who individually

18    associated with and/or participated in the conduct of

19    said enterprise's affairs.

20        (d)    USI is a "person," within the meaning of 18 U.S.C.

21    §§ 1961(3) and 1962(b), within the meaning of 18 U.S.C.

22    §§ 1961(3) and 1962(c), who individually associated

23    with and/or participated in the conduct of said

24    enterprise's affairs.

25         (e)    TANU is a "person," within the meaning of 18

26    U.S.C. §§ 1961(3) and 1962(c), who individually

1    associated with and/or participated in the conduct of
2    said enterprise's affairs.
3      (g)    DHINGRA FIRM is a "person," within the
4    meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who
5    individually associated with and/or participated in the
6    conduct of said enterprise's affairs.
7    (h)    Between February 2008 and April 2012 (at a
8    minimum), HASSAN individually conducted,
9    participated in, engaged in, and operated and managed
10   the affairs of the enterprise through a pattern of
11   racketeering activity within the meaning of 18 U.S.C.
12   §§ 1961(1), 1961(5), and 1962(c). HASSAN's pattern of
13   racketeering activity consisted of the acts of mail and
14   wire fraud (described in paragraphs 24 – 39, *supra*),
15   and the trafficking of counterfeit goods (described in
16   paragraphs 40 – 47, *supra*).
17   (i)    Between February 2008 and April 2012 (at a
18   minimum), DHINGRA and DHINGRA FIRM
19   individually conducted, participated in, engaged in,
20   and operated and managed the affairs of the enterprise
21   through a pattern of racketeering activity within the
22   meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c).
23   DHINGRA and DHINGRA FIRM's pattern of
24   racketeering activity consisted of the acts of mail and
25   wire fraud (described in paragraphs 24 – 39, *supra*),
26   and the trafficking of counterfeit goods (described in
27   paragraphs 40 – 47, *supra*).

1    109.   Alternatively, between February 2008 and April 2012

2    (at a minimum), the following corporation constituted the RICO

3    "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and

4    1962(c), and as recognized in *U.S. v. Feldman*, 853 F.2d 648, 655

5    (9th Cir. 1988): USI.

6           (a)    HASSAN is a "person," within the meaning of 18

7           U.S.C. §§ 1961(3) and 1962(c), who individually

8           associated with and/or participated in the conduct of

9           said enterprise's affairs.

10          (b)    KAPOOR is a "person," within the meaning of 18

11          U.S.C. §§ 1961(3) and 1962(c), who individually

12          associated with and/or participated in the conduct of

13          said enterprise's affairs.

14          (c)    DHINGRA is a "person," within the meaning of

15          18 U.S.C. §§ 1961(3) and 1962(c), who individually

16          associated with and/or participated in the conduct of

17          said enterprise's affairs.

18          (d)    TANU is a "person," within the meaning of 18

19          U.S.C. §§ 1961(3) and 1962(c), who individually

20          associated with and/or participated in the conduct of

21          said enterprise's affairs.

22          (e)    DHINGRA FIRM is a "person," within the

23          meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who

24          individually associated with and/or participated in the

25          conduct of said enterprise's affairs.

26          (f)    Between February 2008 and April 2012 (at a

27          minimum), HASSAN and KAPOOR, conducted,

1  participated in, engaged in, and operated and managed

2  the affairs of the enterprise through a pattern of

3  racketeering activity within the meaning of 18 U.S.C.

4  §§ 1961(1), 1961(5), and 1962(c). HASSAN and

5  KAPOOR's pattern of racketeering activity consisted of

6  the acts of mail and wire fraud (described in

7  paragraphs 24 – 39, *supra*), and the trafficking of

8  counterfeit goods (described in paragraphs 40 – 47,

9  *supra*).

10  (g)    Between February 2008 and April 2012 (at a

11  minimum), TANU, under the direction and control of

12  HASSAN and KAPOOR, conducted, participated in,

13  engaged in, and operated and managed the affairs of

14  the enterprise through a pattern of racketeering

15  activity within the meaning of 18 U.S.C. §§ 1961(1),

16  1961(5), and 1962(c). TANU's pattern of racketeering

17  activity consisted of the acts of mail and wire fraud

18  (described in paragraphs 24 – 39, *supra*), and the

19  trafficking of counterfeit goods (described in

20  paragraphs 40 – 47, *supra*).

21  (h)    Between February 2008 and April 2012 (at a

22  minimum), DHINGRA and DHINGRA FIRM,

23  conducted, participated in, engaged in, and operated

24  and managed the affairs of the enterprise through a

25  pattern of racketeering activity within the meaning of

26  18 U.S.C. §§ 1961(1), 1961(5), and 1962(c). HASSAN's

27  pattern of racketeering activity consisted of the acts of

1    mail and wire fraud (described in paragraphs 24 – 39,
2    *supra*), and the trafficking of counterfeit goods
3    (described in paragraphs 40 – 47, *supra*).
4         (i)    TANU and USI have legal existences separate
5         from their participation in the racketeering.
6         (j)    The separate legal existence of TANU and USI
7         made KAPOOR and HASSAN's activities possible and
8         profitable by providing a legal shield for the illegal
9         activity. Their usual and daily activities were part of
10        the pattern of racketeering activity. TANU submitted
11        the bogus trademark registration relating to Sunwear;
12        USI submitted the bogus trademark registration
13        relating to the Atlanta Braves. Both trademark
14        applications were prepared and filed by DHINGRA and
15        DHINGRA FIRM, on behalf of other Defendants.
16        (k)    USI also presumably leased commercial retail
17        space to store and sell counterfeit goods. USI existed
18        for the purposes of making money for the individual
19        defendants.
20   110.  Alternatively, between February 2008 and April 2012
21   (at a minimum), the following corporation constituted the RICO
22   "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and
23   1962(c), and as recognized in *U.S. v. Feldman*, 853 F.2d 648, 655
24   (9th Cir. 1988): TANU.
25        (a)    HASSAN is a "person," within the meaning of 18
26        U.S.C. §§ 1961(3) and 1962(c), who individually

---

1    associated with and/or participated in the conduct of

2    said enterprise's affairs.

3    (b)    KAPOOR is a "person," within the meaning of 18

4    U.S.C. §§ 1961(3) and 1962(c), who individually

5    associated with and/or participated in the conduct of

6    said enterprise's affairs.

7    (c)    DHINGRA is a "person," within the meaning of

8    18 U.S.C. §§ 1961(3) and 1962(c), who individually

9    associated with and/or participated in the conduct of

10   said enterprise's affairs.

11   (d)   USI is a "person," within the meaning of 18 U.S.C.

12   §§ 1961(3) and 1962(c), who individually associated

13   with and/or participated in the conduct of said

14   enterprise's affairs.

15   (e)    DHINGRA FIRM is a "person," within the

16   meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who

17   individually associated with and/or participated in the

18   conduct of said enterprise's affairs.

19   (f)    Between February 2008 and April 2012 (at a

20   minimum), HASSAN and KAPOOR, conducted,

21   participated in, engaged in, and operated and managed

22   the affairs of the enterprise through a pattern of

23   racketeering activity within the meaning of 18 U.S.C.

24   §§ 1961(1), 1961(5), and 1962(c). HASSAN and

25   KAPOOR's pattern of racketeering activity consisted of

26   the acts of mail and wire fraud (described in

27   paragraphs 24 – 39, *supra*), and the trafficking of

1     counterfeit goods (described in paragraphs 40 – 47,

2     *supra*).

3     (g)    Between February 2008 and April 2012 (at a

4     minimum), USI, under the direction and control of

5     HASSAN and KAPOOR, conducted, participated in,

6     engaged in, and operated and managed the affairs of

7     the enterprise through a pattern of racketeering

8     activity within the meaning of 18 U.S.C. §§ 1961(1),

9     1961(5), and 1962(c). USI's pattern of racketeering

10     activity consisted of the acts of mail and wire fraud

11     (described in paragraphs 24 – 39, *supra*), and the

12     trafficking of counterfeit goods (described in

13     paragraphs 40 – 47, *supra*).

14     (h)    Between February 2008 and April 2012 (at a

15     minimum), DHINGRA and DHINGRA FIRM,

16     conducted, participated in, engaged in, and operated

17     and managed the affairs of the enterprise through a

18     pattern of racketeering activity within the meaning of

19     18 U.S.C. §§ 1961(1), 1961(5), and 1962(c). DHINGRA

20     and DHINGRA FIRM's pattern of racketeering activity

21     consisted of the acts of mail and wire fraud (described

22     in paragraphs 24 – 39, *supra*), and the trafficking of

23     counterfeit goods (described in paragraphs 40 – 47,

24     *supra*).

25     (i)    TANU and USI have legal existences separate

26     from their participation in the racketeering.

---

1          (j)     The separate legal existence of TANU and USI

2          made KAPOOR and HASSAN's activities possible and

3          profitable by providing a legal shield for the illegal

4          activity. Their usual and daily activities were part of

5          the pattern of racketeering activity. TANU submitted

6          the bogus trademark registration relating to Sunwear;

7          USI submitted the bogus trademark registration

8          relating to the Atlanta Braves. Both trademark

9          applications were prepared and filed by DHINGRA and

10         DHINGRA FIRM, on behalf of other Defendants.

11          (k)     TANU also presumably leased commercial retail

12          space to store and sell counterfeit goods. USI existed

13          for the purposes of making money for the individual

14          defendants.

15      111. Alternatively, between February 2008 and April 2012

16 (at a minimum), the following individual constituted an

17 "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and

18 1962(c): DHINGRA.

19          (a)     HASSAN is a "person," within the meaning of 18

20          U.S.C. §§ 1961(3) and 1962(c), who individually

21          associated with and/or participated in the conduct of

22          said enterprise's affairs.

23          (b)     KAPOOR is a "person," within the meaning of 18

24          U.S.C. §§ 1961(3) and 1962(c), who individually

25          associated with and/or participated in the conduct of

26          said enterprise's affairs.

1   (c)   USI is a "person," within the meaning of 18 U.S.C.
2   §§ 1961(3) and 1962(b), within the meaning of 18 U.S.C.
3   §§ 1961(3) and 1962(c), who individually associated
4   with and/or participated in the conduct of said
5   enterprise's affairs.
6   (d)   TANU is a "person," within the meaning of 18
7   U.S.C. §§ 1961(3) and 1962(c), who individually
8   associated with and/or participated in the conduct of
9   said enterprise's affairs.
10   (e)   DHINGRA FIRM is a "person," within the
11   meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who
12   individually associated with and/or participated in the
13   conduct of said enterprise's affairs.
14   (f)   Between February 2008 and April 2012 (at a
15   minimum), HASSAN and KAPOOR individually
16   conducted, participated in, engaged in, and operated
17   and managed the affairs of the enterprise through a
18   pattern of racketeering activity within the meaning of
19   18 U.S.C. §§ 1961(1), 1961(5), and 1962(c). HASSAN
20   and KAPOOR's pattern of racketeering activity
21   consisted of the acts of mail and wire fraud (described
22   in paragraphs 24 – 39, *supra*), and the trafficking of
23   counterfeit goods (described in paragraphs 40 – 47,
24   *supra*).
25   (g)   Between February 2008 and April 2012 (at a
26   minimum), USI, under the direction and control of
27   HASSAN and KAPOOR, conducted, participated in,

1 engaged in, and operated and managed the affairs of

2 the enterprise through a pattern of racketeering

3 activity within the meaning of 18 U.S.C. §§ 1961(1),

4 1961(5), and 1962(c). USI's pattern of racketeering

5 activity consisted of the acts of mail and wire fraud

6 (described in paragraphs 24 – 39, *supra*), and the

7 trafficking of counterfeit goods (described in

8 paragraphs 40 – 47, *supra*).

9 (h) Between February 2008 and April 2012 (at a

10 minimum), TANU, under the direction and control of

11 HASSAN and KAPOOR, conducted, participated in,

12 engaged in, and operated and managed the affairs of

13 the enterprise through a pattern of racketeering

14 activity within the meaning of 18 U.S.C. §§ 1961(1),

15 1961(5), and 1962(c). TANU's pattern of racketeering

16 activity consisted of the acts of mail and wire fraud

17 (described in paragraphs 24 – 39, *supra*), and the

18 trafficking of counterfeit goods (described in

19 paragraphs 40 – 47, *supra*).

20 (i) Between February 2008 and April 2012 (at a

21 minimum), DHINGRA individually conducted,

22 participated in, engaged in, and operated and managed

23 the affairs of the enterprise through a pattern of

24 racketeering activity within the meaning of 18 U.S.C.

25 §§ 1961(1), 1961(5), and 1962(c). DHINGRA and

26 DHINGRA FIRM's pattern of racketeering activity

27 consisted of the acts of mail and wire fraud ((described

1      in paragraphs 24 – 39, *supra*), and the trafficking of

2      counterfeit goods (described in paragraphs 40 – 47,

3      *supra*).

4      112.   Alternatively, between February 2008 and April 2012

5  (at a minimum), the following corporation constituted the RICO

6  "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and

7  1962(c), and as confirmed in *U.S. v. Feldman*, 853 F.2d 648, 655

8  (9th Cir. 1988): DHINGRA FIRM.

9      (a)    HASSAN is a "person," within the meaning of 18

10      U.S.C. §§ 1961(3) and 1962(c), who individually

11      associated with and/or participated in the conduct of

12      said enterprise's affairs.

13      (b)    KAPOOR is a "person," within the meaning of 18

14      U.S.C. §§ 1961(3) and 1962(c), who individually

15      associated with and/or participated in the conduct of

16      said enterprise's affairs.

17      (c)    DHINGRA is a "person," within the meaning of

18      18 U.S.C. §§ 1961(3) and 1962(c), who individually

19      associated with and/or participated in the conduct of

20      said enterprise's affairs.

21      (d)   USI is a "person," within the meaning of 18 U.S.C.

22      §§ 1961(3) and 1962(c), who individually associated

23      with and/or participated in the conduct of said

24      enterprise's affairs.

25      (e)    TANU is a "person," within the meaning of 18

26      U.S.C. §§ 1961(3) and 1962(c), who individually

1     associated with and/or participated in the conduct of

2     said enterprise's affairs.

3      (f)    Between February 2008 and April 2012 (at a

4     minimum), HASSAN and KAPOOR, conducted,

5     participated in, engaged in, and operated and managed

6     the affairs of the enterprise through a pattern of

7     racketeering activity within the meaning of 18 U.S.C.

8     §§ 1961(1), 1961(5), and 1962(c). HASSAN and

9     KAPOOR's pattern of racketeering activity consisted of

10    the acts of mail and wire fraud (described in

11    paragraphs 24 – 39, *supra*), and the trafficking of

12    counterfeit goods (described in paragraphs 40 – 47,

13    *supra*).

14    (g)    Between February 2008 and April 2012 (at a

15    minimum), DHINGRA conducted, participated in,

16    engaged in, and operated and managed the affairs of

17    the enterprise through a pattern of racketeering

18    activity within the meaning of 18 U.S.C. §§ 1961(1),

19    1961(5), and 1962(c). DHINGRA's pattern of

20    racketeering activity consisted of the acts of mail and

21    wire fraud (described in paragraphs 24 – 39, *supra*),

22    and the trafficking of counterfeit goods (described in

23    paragraphs 40 – 47, *supra*).

24    (h)    Between February 2008 and April 2012 (at a

25    minimum), USI, under the direction and control of

26    HASSAN and KAPOOR, conducted, participated in,

27    engaged in, and operated and managed the affairs of

1    the enterprise through a pattern of racketeering

2    activity within the meaning of 18 U.S.C. §§ 1961(1),

3    1961(5), and 1962(c). USI's pattern of racketeering

4    activity consisted of the acts of mail and wire fraud

5    (described in paragraphs 24 – 39, *supra*), and the

6    trafficking of counterfeit goods (described in

7    paragraphs 40 – 47, *supra*).

8    (i)    Between February 2008 and April 2012 (at a

9    minimum), TANU, under the direction and control of

10   HASSAN and KAPOOR, conducted, participated in,

11   engaged in, and operated and managed the affairs of

12   the enterprise through a pattern of racketeering

13   activity within the meaning of 18 U.S.C. §§ 1961(1),

14   1961(5), and 1962(c). TANU's pattern of racketeering

15   activity consisted of the acts of mail and wire fraud

16   (described in paragraphs 24 – 39, *supra*), and the

17   trafficking of counterfeit goods (described in

18   paragraphs 40 – 47, *supra*).

19   (j)    DHINGRA FIRM presumably has a legal

20   existence separate from its participation in the

21   racketeering.

22   (k)    The separate legal existence of DHINGRA FIRM

23   made DHINGRA's activities possible and profitable by

24   providing a legal shield for the illegal activity. Their

25   usual and daily activities were part of the pattern of

26   racketeering activity. DHINGRA and DHINGRA FIRM

27   submitted the bogus trademark registration

1          applications relating to Sunwear and the Atlanta

2          Braves on the other defendants' behalf.

3      113.  At all relevant times herein, the enterprises alleged in

4  paragraphs 106 through 112 (*supra*) were engaged in, and their

5  activities affected, interstate commerce and foreign commerce.

6      114.  All of the acts of racketeering described in paragraphs

7  24 through 47, *supra*, were related so as to establish a "pattern of

8  racketeering activity," within the meaning of 18 U.S.C, § 1962(c),

9  in that their common purpose was to defraud Plaintiff of money

10  and property and the common result was the defrauding of

11  Plaintiff resulting in the loss of money and property; Defendants,

12  each of them, personally or through their agents or related

13  entities, directly or indirectly participated in all of the acts and

14  employed the same or similar methods of commission; Plaintiff

15  was the victim of the acts of racketeering; and/or the acts of

16  racketeering were otherwise interrelated by distinguishing

17  characteristics and were not isolated events.

18      115.  All of the acts of racketeering described in paragraphs

19  24 through 47, *supra*, were continuous as to form a pattern of

20  racketeering activity in that defendants engaged in the predicate

21  acts over a substantial period of time; or, in that defendants'

22  efforts of racketeering were an extension of HASSAN and

23  KAPOOR's efforts to acquire intellectual property belonging to

24  others through fraudulent and surreptitious means. DHINGRA

25  actively participated and contributed to the scheme by preparing

26  and filing the bogus trademark registration applications.

27  Defendants' acts of racketeering threatened to continue

1    indefinitely and would have continued indefinitely but for the
2    intervention of Sunwear and the CBP.
3         116.  As a direct and proximate result of, and by reason of,
4    the activities of defendants, and their conduct in violation of 18
5    U.S.C. § 1962(c), Plaintiff was injured in its business and property,
6    within the meaning of 18 U.S.C. § 1964(c). Among other things,
7    Plaintiff suffered damages to the extent that the CBP levied fines
8    and penalties against it which were later reduced to a civil
9    judgment; to the extent Plaintiff incurred legal fees to set aside
10   the judgment entered by the District Court for the Northern
11   District of Georgia. Plaintiff suffered further damages to the
12   extent the Government executed writs of garnishment from
13   Plaintiff's bank accounts. Plaintiff is, therefore, entitled to recover
14   treble damages it sustained together with the cost of suit,
15   including costs, reasonable attorneys' fees and reasonable experts'
16   fees.
17
18   **RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT**
19                       **COUNT THREE**
20              **VIOLATION OF 18 U.S.C. § 1962(d):**
21      **Conspiracy to Engage In a Pattern of Racketeering Activity**
22                  **(Against All Defendants)**
23
24        117.  Plaintiff re-alleges each and every allegation set forth
25   in paragraphs 1 through 116 above, inclusive, and incorporates
26   them by reference as though fully set forth herein.

---

1    118.  HASSAN, KAPOOR, USI, TANU, DHINGRA, and

2    DHINGRA FIRM, each of them, conspired to conduct or

3    participate, directly or indirectly, in the conduct of the affairs of

4    the enterprises through a pattern racketeering activity (*see supra*

5    paragraphs 24 – 47) in violation of 18 U.S.C. § 1962(d). In

6    particular, Defendants intended to further a common endeavor

7    which, if completed, would satisfy all of the elements of a

8    substantive RICO criminal offense and adopted the goal of

9    furthering or facilitating the criminal behavior.

10    119.  Plaintiff was injured by Defendants' overt acts that are

11    of racketeering or otherwise unlawful under the RICO statute,

12    which included, *inter alia*, acts of mail and wire fraud (as

13    described with particularity in paragraphs 24 – 39, *supra*); and

14    the trafficking of goods bearing counterfeit marks (as described

15    with particularity in paragraphs 40 – 47, *supra*).

16    120.  As a direct and proximate result of, and by reason of,

17    the activities of Defendants, and their conduct in violation of 18

18    U.S.C. § 1962(d), Plaintiff was injured in its business or property,

19    within the meaning of 18 U.S.C. § 1964(c). Plaintiff is, therefore,

20    entitled to recover treble damages it sustained together with the

21    cost of suit, including costs, reasonable attorneys' fees, and

22    reasonable experts' fees.

23

24    / / /

25

26    / / /

27

---

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Billion International Trading, Inc., demands judgment as follows:

1.      Judgment be entered in favor of Plaintiff Billion International Trading, Inc. and against HASSAN, KAPOOR. USI, TANU, DHINGRA and DHINGRA FIRM, jointly and severally, in the amount of actual damages to be proven at trial, but in no event a sum no less than $ 753,196.00.

2.      Plaintiff be awarded prejudgment interest on the amount of damages and/or losses that Plaintiff has sustained;

3.      Plaintiff be awarded treble damages pursuant to 18 U.S.C. § 1964(c);

4.      Plaintiff be awarded punitive damages pursuant to California Civil Code § 3294

5.      Plaintiff be awarded reasonable costs and attorneys' fees pursuant to 18 U.S.C. § 1964(c); and

6.      Plaintiff be awarded such other and further relief as the Court deems just and equitable.

Dated: March 13, 2013          **BRYON Y. CHUNG, APC**

By:    /s/ Bryon Y. Chung, Esq.

     Bryon Y. Chung, Esq.
     Attorney for Plaintiff,
     Billion International Trading, Inc.

---

# EXHIBIT A

☐001

# SALES CONTRACT

SELLER: BILLION INT'L TRADING INC.
11221 RUSH ST. #D,
S. EL MONTE CA 91733
TEL: (626) 555 1055
FAX: (626) 2251237

BUYER: YARO USA

NO: CC103482008
DATE: SEP/15/2008

The undersigned Sellers and Buyers have agreed to close the following transaction according the terms and conditions stipulated below:

| STYLE | DESCRIPTION CAP WITH EMB | QUANTITY | UNIT PRICE PER PIECE | AMOUNT USP L.A. |
|-------|--------------------------|----------|----------------------|-----------------|
| CAP | | 20,100 | 51.05 | $33,869.80 |
| | L.D.P G.A PIN 30340 | | | |
| QUALITY AS PER SELLER'S SAMPLE AND THIS ATTACHMENT SPECIFIED. | | | | |
| TOTAL LDP LOS ANGELES | | 20,100 | | $33,638.50 |

ok
V.Kanpoor.

PACKING: 1PC/SIZE IN ONE BOX, 5/24 PC BOX) IN ONE CARTON, TOTAL 144 PC/GTN ONE COLOR AND SIZE.

LABEL & CARE LABEL: AS PER THE BUYER'S PRINT SAMPLE.

SIZE:  SEE ATTACHMENT

PLEASE Shipment As PER same like SAMPLE

DELIVERY DATE:  BEFORE NOV 30, 2008 AT LOS ANGELES.

PAYMENT: TOTAL AMOUNT WILL BE PAID BY COD, ONCE THE GOODS BE DELIVERED AT BUYER'S WAREHOUSE.

GENERAL TERMS:
1. Fabric CAP WITH EMB
2. Reasonable tolerance in quality, weight, measurements. Designs and colours is allowed for which no claims will be entertained.
3. Buyers are to assume full responsibilities for any consequences arising from (a) the use of labels, designs or patterns of this contract, (b) delay  on the payment .(c) New adjustments inconsistent with the provisions of this Sales Contract.
4. Sellers are not responsible for late or non-delivery in the event of force majeure or any contingencies beyond Sellers's control.
5. Claims if any concerning the goods shipped should be filed within 30 days after arrival at destination.
6. This contract will be effective when duly signed by both parties.
7. In case the buyer reject the above contracted good, the seller have  the right to recoup the downpayment as well as the right to sell the contracted goods even the RN No. or label is for the buyer or the clients of the buyer.

V. Kanpoor.
CONFIRMED BY BUYER
9.18.08
DATE

CONFIRMED BY SELLER
DATE